```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                      FORT WORTH DIVISION

CITY OF CLINTON, ARKANSAS      §
                               §
V.                             §     CIVIL NO. 4:09-CV-386-Y
                               §     (Consolidated with
PILGRIM'S PRIDE CORPORATION    §      4:09-CV-387-Y)
```

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Pending before the Court is the Motion to Dismiss (doc. #24) filed by defendant Pilgrim's Pride Corporation ("Pilgrim's"). After review, the Court concludes that Plaintiffs have failed to state a claim for promissory estoppel, fraud, and intentional infliction of emotional distress ("IIED"). Because some plaintiffs are from Arkansas, Oklahoma, and Louisiana and have not established their entitlement to invoke Texas law, the Court concludes that they have failed to state a claim under the Texas Deceptive Trade Practices Act ("DTPA"). The Texas plaintiffs have stated a claim under the DTPA and all plaintiffs have stated a claim under the Packers & Stockyards Act. Accordingly, Pilgrim's motion will be granted in part and denied in part.

I.  Background

Plaintiffs are contract poultry growers located in Texas, Arkansas, Oklahoma, and Louisiana who raise chicken for Pilgrim's. Pilgrim's provides growers like Plaintiffs chicks, feed, medicine, and other "inputs," as well as related services, to facilitate the growers' operations. Plaintiffs filed this complaint as part of

Pilgrim's chapter 11 bankruptcy, alleging that Pilgrim's, one of the world's largest poultry producers, used its market power to reduce the supply of chicken to artificially manipulate the price of chicken upward. According to Plaintiffs, Pilgrim's accomplished this by closing or "idling" some of its facilities and terminating grower contracts. Plaintiffs allege that they were harmed by these actions. Plaintiffs also advance various state-law claims.

II. Discussion

    A. Rule 12(b)(6) Standards

        1. Standard for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357

2

(1969)). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*, 677 F.2d at 1050. The Court must also "limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

2. Consideration of Documents Submitted With the Motion

Pilgrim's has attached some of the plaintiffs' grower agreements to its motion to dismiss. Pilgrim's asserts that the agreements show that some of the plaintiffs grow pullets and breeders, rather than chicken for slaughter, and, therefore, may not bring suit under the PSA. Pilgrim's also argues that the agreements contain a choice-of-law provision that prevents some of

3

the plaintiffs from invoking Texas law.

Plaintiffs argue that it is inappropriate for the Court to consider such documentary evidence in ruling on Pilgrim's motion to dismiss. Generally, in considering a motion to dismiss under Rule 12(b)(6), "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). A court may, however, consider a document that a defendant attaches to a motion to dismiss if the document is referred to in the plaintiff's complaint and is central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

Plaintiffs refer to their contractual arrangement with Pilgrim's throughout their complaint, making it apparent that the grower agreements are central to their claims. Plaintiffs characterize themselves as "contract poultry growers for Pilgrims." (Compl. at 17, ¶6.) Plaintiffs base their PSA claim on the unfavorable terms of their agreements and the fact that other growers received more favorable terms. For instance, certain growers were given long-term agreements, while Plaintiffs were given only year-to-year agreements. (*Id*. at 25, ¶25.) Plaintiffs also complain that they were treated unfavorably in relation to Bo Pilgrim who, apart from being Pilgrim's chairman, operates his own

4

grower farm--the LTD farm.  Mr. Pilgrim was paid agreed prices for his chickens but Plaintiffs were paid under a system based on a floating national commodity price for chicken.  (*Id.* at 40, ¶¶70-71.)  Pilgrim's also allegedly violated the PSA by retaliating against growers who would not upgrade their chicken houses to include cool-cell technology, despite the fact that the agreements did not require such upgrades.  (*Id.* at 15, ¶3.)  According to Plaintiffs, those growers who refused to upgrade had their contracts terminated.

Plaintiffs' other claims are also based on their contracts with Pilgrim's.  Plaintiffs insist that they are consumers under the Texas Deceptive Trade Practices Act, alleging that "Pilgrim's forces Plaintiffs to 'purchase' its feed, chicks, medicine and management services by compensating itself for those goods and services through application of 'settlement accounts' based upon a 'feed conversion' formula devised by Pilgrims."  (Compl. at 31, ¶40.)  The fraud claim advanced by Plaintiffs is also based on the contract.  Plaintiffs aver that Pilgrim's purported to pay growers based on the system set out in the agreements while it was, in fact, secretly manipulating the system to reduce payments to growers.  (*Id.* at 26, ¶28.)  They say Pilgrim's was able to do this because of the degree of control retained by it under the contracts and the lack of control granted to Plaintiffs.

Given these circumstances, the Court concludes that the grower

agreements are central to Plaintiffs' claims and, therefore, it is appropriate to consider the agreements submitted by Pilgrim's in ruling on its motion to dismiss. Pilgrim's acknowledges that it has not provided the agreement of each plaintiff. This is because there are over five hundred fifty plaintiffs. Pilgrim's states that the provided agreements are representative of all of the agreements at issue, and Plaintiffs do not challenge this.

Plaintiffs also object to the Court's consideration of Pilgrim's appendix on the ground that it does not comply with the local rules. Plaintiffs argue that it is not a self-contained document and that Pilgrim's has not highlighted or tabbed the specific portions of the appendix on which it relies. The Court will not strike the appendix in its entirety, but will instead consider the appendix only where Pilgrim's has provided specific citations to indicate the portions of the documents relied upon.

Finally, Plaintiffs complain that Pilgrim's disclosed their personal information, including social security numbers, in filing the appendix. Pilgrim's explains that the disclosure of personal information was a mistake that has been corrected. Pilgrim's is admonished to be more careful in filing documents in the future. And because Plaintiffs complain that some personal information, including one social security number, has yet to be redacted, Pilgrim's is ORDERED to review its appendix, redact any private information that remains, and move to substitute the redacted

appendix for the one filed initially.

  B. The Packers & Stockyards Act

  Plaintiffs make claims under § 192(a), (b), (e), (f), and (g) of the PSA. According to Pilgrim's, Plaintiffs have failed to state a claim under the PSA for various reasons. Pilgrim's asserts that Plaintiffs cannot maintain a suit under the PSA because they are pullet and breeder growers, and the PSA covers only poultry raised for slaughter. Section 192 makes it unlawful for a "live poultry dealer" to engage in certain activities, and § 182(10) defines live poultry dealer, in relevant part, as "any person engaged in the business of obtaining live poultry by purchase or under a poultry growing arrangement for the purpose of either slaughtering it or selling it for slaughter by another." 7 U.S.C. § 182(10). Because pullets and breeders are obtained and raised for the purpose of producing eggs, rather than for the purpose of being slaughtered for meat, Pilgrim's insists the PSA does not apply to Plaintiffs' claims. But Plaintiffs do not rely on Pilgrim's status as a live poultry dealer alone. They also allege that Pilgrim's is a meat "packer" as defined by § 191. Pilgrim's does not contest that it is a meat packer.

  Pilgrim's argues that the statute of limitations has run on Plaintiffs' claims under sections 192(a) and (b) based on the alleged favorable treatment given to Bo Pilgrim's LTD farm. But

7

Plaintiffs have pleaded that the discovery rule applies and tolled the statute of limitations, making these claims timely. Pilgrim's does not argue otherwise.

Pilgrim's further argues that the buy-sell agreement, which allegedly granted the LTD farm favorable terms that were unfair in relation to other growers, has been displaced by a subsequent agreement. But this does not vitiate Plaintiffs' allegation that, for a time, the LTD farm and their operations were treated differently. Pilgrim's also argues that Plaintiffs were informed, in their grower agreements, of how they would be treated in relation to other growers closely associated with Pilgrim's, referred to as "insiders." Plaintiffs were further aware, as a product of the agreements, that they would have to maintain their facilities in accordance with Pilgrim's policy. According to Pilgrim's, this vitiates Plaintiffs' claims that Pilgrim's has violated the PSA by forcing them to upgrade their facilities. Pilgrim's argues that the provisions of the PSA do not displace traditional principles of freedom of contract and do not require that an integrator treat all growers the same. But Plaintiffs have alleged specific examples of how they were treated differently than other growers--for instance, the calculation of their compensation and how they were provided supplies. Whether Pilgrim's alleged treatment of its growers was so disparate and unreasonable as to actually constitute a violation of the PSA is a fact issue not to

be resolved in ruling on a motion to dismiss.

Finally, with regard to the PSA, Pilgrim's contends that Plaintiffs have not sufficiently alleged an attempt by it to manipulate the price of chicken, as required for a claim under § 192(e). But Plaintiffs allege that Pilgrim's reduced its production of chicken by closing or "idling" several of its growers facilities. Plaintiffs further allege that Pilgrim's chose grower facilities that were not near another poultry integrator so the growers could not sell their chickens to a competitor of Pilgrim's. This was done in an effort to reduce not only the amount of chicken produced by Pilgrim's but the amount of chicken in the overall market. Although Pilgrim's may have a benign, economics-based explanation for these actions, and may be able to prove that Plaintiffs suffered no harm as a result of these actions, Plaintiffs' pleadings with regard to the PSA are sufficient to survive a motion to dismiss.

B. Texas Deceptive Trade Practices Act

Pilgrim's next argues that Plaintiffs' claims under the Texas DTPA should be dismissed. First, Pilgrim's points out that many of the plaintiffs are from Arkansas, Oklahoma, and Louisiana and, therefore, are not entitled to invoke the provisions of the Texas DTPA. In fact, Pilgrim's points out that the Arkansas and Louisiana plaintiffs signed agreements including a choice-of-law

9

provision. The choice-of-law provision in the agreements designates the law of the state in which the grower farm is located as governing the agreement and all other dealings between the grower and Pilgrim's. (Mot. App. at Exs. A, § H.16; B, § H.17; C, § H.17; D, § H.17.) More generally, despite the fact that Plaintiffs reside in four states, Plaintiffs never discuss why all Plaintiffs are entitled to invoke Texas law.

A federal court applies the choice-of-law rules of the state in which it sits in order to determine which state's substantive law applies. *See Hartford Underwriters Ins. Co. v. Foundation Health Servs., Inc.*, 524 F.3d 588, 593 (5th Cir. 2008). In the state of Texas, a court need only perform a choice-of-law analysis in the absence of a valid contractual agreement regarding the applicable law. *Am. Home Assurance Co. v. Safeway Steel Prods. Co., Inc.*, 743 S.W.2d 693, 697 (Tex. App.--Austin 1987, writ denied). Because Pilgrim's has produced a contract by which the Arkansas and Louisiana plaintiffs agreed that their relations with Pilgrim's would be governed by the law of their home states, and because these plaintiffs have not contested the validity of those agreements, the Court concludes that the Arkansas and Louisiana plaintiffs may not rely on Texas law. And more generally, as to both these plaintiffs and the Oklahoma plaintiffs, the Court concludes that because nothing in their pleadings or response to the motion to dismiss indicates that the events giving rise to

10

their DTPA claims occurred in the State of Texas or are connected with Texas, these plaintiffs may not rely on the Texas DTPA. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421-22 (Tex.1984) (describing Texas's adoption of the "most significant relationship" test).

As for the Texas plaintiffs' DTPA claims, Pilgrim's argues that they are not "consumers" as is required to maintain a suit under the DTPA. Under the DTPA, a consumer is defined in relevant part as an entity that "seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(4). Plaintiffs insist their complaint sufficiently alleges consumer status. Plaintiffs allege that the "are 'consumers' as that term is defined in Texas Business & Commerce Code Section 17.45(a)" and that they are forced to "purchase" supplies and services from Pilgrim's. (Compl. at 31, ¶40.) This is a specific instance of Plaintiffs' relying on the agreements in support of their claims, making it appropriate for this Court to consider the content of the agreements.

Pilgrim's cites several provisions of Plaintiffs' agreements that explicitly state that Pilgrim's retains title to feed and chicks throughout the growing process. (Mot. App. at Exs. A, § F.1-2; B, § F.1-2; C, § F.1-2; D, § F.1-2; E, § F.1-2; F, ¶ 10.) Plaintiffs do not dispute this. Nevertheless, Plaintiffs allege that they must pay for supplies and services, which is enough to

11

support a conclusion that they purchase or at least lease supplies and services.

C.   Intentional Infliction of Emotional Distress

Again, the fact that neither party has addressed which state's substantive law applies to this claim complicates the matter. Plaintiffs cite no legal authority for their IIED claims in their complaint, but they brief the claims in terms of Texas law.  As with the DTPA claims, because Plaintiffs have not alleged facts that show the Arkansas, Oklahoma, or Louisiana plaintiffs are entitled to invoke Texas substantive law, the Court dismisses the IIED claims of these plaintiffs.

With regard to the IIED claims made by Texas Plaintiffs, Pilgrim's argues that such claims must be dismissed because IIED is a "gap-filler" tort that was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory." *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  Plaintiffs' description of the acts giving rise to their IIED claims states: "[Pilgrim's] conduct included the following actions by [its] agent, managers, officers and vice-principals: use of vulgar cursing and verbal threats over an extended period, threats of economic devastation, foreclosure and bankruptcy, and the use of economic coercion to an outrageous and unfair degree."

12

(Compl. at 54.)  Plaintiffs also allege that Pilgrim's manipulated them, abused its power, and joked about and made light of their "personal plight."  To the extent that these allegations refer to Pilgrim's alleged use of its size, market share, and business relationship with Plaintiffs to exert control over Plaintiffs and have a negative economic impact on them, those facts are the basis of Plaintiffs' PSA, fraud, and promissory-estoppel claims.  Thus, an IIED theory is unavailable to Plaintiffs.  *See Creditwatch, Inc. v. Jackson*, 157 S.W.3 814, 816 (2005) (concluding that facts covered by other available remedies cannot be the basis of an IIED claim).  And Plaintiffs' allegation that Pilgrim's representatives used vulgar language and threats over an extended amount of time and joked about their plight is so vague as to fail to make their IIED claim plausible.  *See Iqbal*, 129 S. Ct. at 1949 (concluding that the factual allegations must establish the claim is plausible, which is done when the allegations allow the court to infer the defendant is liable for the misconduct alleged); *see also Creditwatch, Inc.*, 157 S.W.3d at 817 (noting that, under Texas law, a court must determine whether conduct is sufficiently extreme and outrageous to be submitted to a jury).  Thus, Plaintiffs' IIED claims will be dismissed.

   D.   Promissory Estoppel

   Pilgrim's also points to the grower agreements in seeking

13

dismissal of Plaintiffs' promissory-estoppel claims. The doctrine of promissory-estoppel applies only where no contract on the subject matter exists. *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (2002). That is, if "a valid contract between the parties covers the alleged promise, promissory estoppel is not applicable to that promise. Instead, the wronged party must seek damages under the contract." *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App.--El Paso 1997, writ denied); *see also Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.--Austin 2001, no pet.); *Guaranty Bank v. Lone Star Life Ins. Co.*, 568 S.W.2d 431, 434 (Tex. Civ. App.--Dallas 1978, writ ref'd n.r.e.).

Plaintiffs allege that Pilgrim's promised they "could raise chickens in their houses as long as they wanted to raise chickens, so long as they operated their poultry houses in a safe manner and were not placed on productivity probation" and that their houses "were appropriate to raise chickens for Pilgrim's." Pilgrim's is also alleged to have represented that it "was committed to growers for the long run." Further, Pilgrim's allegedly promised that Plaintiffs' chicken houses would "last indefinitely with proper maintenance." But because Pilgrim's has produced agreements that address Plaintiffs' obligation to comply with Pilgrim's decisions regarding housing of the chickens, the duration of the grower arrangements, and how the growers would be compensated, Plaintiffs

14

may not maintain promissory-estoppel claims based on these promises.

Pilgrim's also argues that, even assuming the grower agreements do not prevent Plaintiffs from pursuing promissory-estoppel claims, Plaintiffs have not sufficiently pleaded the claims. To state a claim for promissory estoppel, a plaintiff must allege: (1) that the defendant made a promise; (2) that the defendant should have foreseen that the plaintiff would rely on the promise; (3) that the plaintiff did, in fact, act in reliance on the promise to his detriment; and (4) that injustice can only be avoided by enforcing the promise. *See Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex.1997); *Van Dyke v. Glover*, 934 S.W.2d 204, 209 (Ark. 1996); *Northside Furniture of Ruston, Inc. v. First Tower Loan, Inc.*, 999 So.2d 151, 154 (La. Ct. App. 2009).[1] Vague and indefinite statements that amount to no more than speculation about future events, such as those from Plaintiffs' complaint recounted above, are insufficient to support a claim for promissory estoppel. *See City of Beaumont v. Excavators &*

---

[1] A federal ourt must apply state substantive law to state-law claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Plaintiffs are citizens of Texas, Arkansas, Oklahoma, and Louisiana. But none of the parties addresses what state's substantive law should be applied to these claims. Because the laws of these states is the same regarding promissory estoppel, the Court need not decide the issue at this point. *Cf. Stewart v. United States*, 512 F.2d 269, 272 n.10 (5th Cir. 1975) (noting there is no choice-of-law problem where the law of the relevant states is identical); *Smith v. Am. Founders Fina. Corp.*, H-05-1779, 2006 WL 2844251, at *7 (S.D. Tex. Sept. 29, 2006) (same).

*Constructors, Inc.*, 870 S.W.2d 123, 138 (Tex. App.--Beaumont 1993, writ denied) (concluding statement that amounted to speculation about future events and that did not set a time frame for performance of the alleged promise could not support claim for promissory estoppel); *Gillium v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex.App.--Dallas 1989, no writ) (concluding that a vague and indefinite promise could not support claim for promissory estoppel); *cf. Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1281 (11th Cir. 2003) ("[P]romissory estoppel has no application where the promise relied upon is for an indefinite duration."). Moreover, given the indefiniteness of the alleged promises, Plaintiffs were not reasonable in relying on them. *Cf. Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 503 (Tex. 1998) (concluding that a party may not reasonably or justifiably rely on an indefinite promise).

   E.   Fraud

   Finally, Pilgrim's argues that Plaintiffs' fraud claims are not sufficiently pleaded. After review of Plaintiffs' complaint, the Court agrees that their fraud allegations are insufficient under Rule 9(b). Plaintiffs, in their response brief, make no effort to defend the sufficiency of their pleading of the fraud claims. They simply request an opportunity to replead in the event the Court concludes that their pleadings are insufficient.

   After review of Plaintiffs' complaint, the Court concludes

that it fails to state a claim for fraud.  Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud . . . ."  FED. R. CIV. P. 9(b).  "[T]he Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent."  *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).  Plaintiffs never allege when the fraudulent statements were made or who made them. And Plaintiffs never allege facts that would support the conclusion that Pilgrim's had a duty to disclose to Plaintiffs information about its dealings with Bo Pilgrim and his farm or its plans for future operations.  A duty to disclose is an essential element of a fraud claim based on nondisclosure.  *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Bunge Corp. v. GATX Corp.*, 557 So.2d 1376, 1383 (La. 1990); *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 653 S.W.2d 128, 135 (Ark. 1983) (noting action for fraud by concealment must be based on duty to disclose); *Barry v. Orahood*, 132 P.2d 645, 647-48 (Okla. 1942) (noting the requirement of a duty to disclose to maintain fraud action based on nondisclosure).  Consequently, Pilgrim's motion will be granted on this point and Plaintiffs' fraud and fraudulent-concealment claims will be dismissed.

III.  Conclusion

17

The Court concludes that Plaintiffs have stated a claim under the PSA. The Court further concludes that the Texas Plaintiffs have stated a claim under the DTPA. As a result, Pilgrim's motion is DENIED as to these claims.

Plaintiffs have, however, failed to state a claim for fraud, promissory estoppel, or IIED. Accordingly, Pilgrim's motion to dismiss is GRANTED as to these claims.

Even so, before a district court dismisses claims with prejudice, the plaintiff must be given a "fair opportunity to make his case." *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, (5th Cir. 2003). Thus, the Court will allow Plaintiffs to file a motion for leave to file an amended complaint. *See Whitaker v. City of Houston*, 963 F.2d 831, 835 (5th Cir. 1992) (holding that after a complaint has been dismissed the plaintiff must seek leave to file an amended complaint, regardless of whether a responsive pleading has been filed). The motion for leave must be accompanied by the proposed amended complaint. *See* N.D. TEX. LOC. R. CIV. P. 15.1. Generally, the motion for leave must establish why the amended complaint states a claim against Pilgrim's. *See Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 531 (5th Cir. 2004) (holding that district court, having granted a motion to dismiss, properly denied plaintiff's motion to amend because the proposed amendment did not cure the complaint's defects). Specifically, the proposed complaint must allege specific facts in support of each element of

18

Plaintiffs' claims, not vague characterizations of the actions allegedly taken by Pilgrim's.  The fraud claims must be pleaded with the specificity required by Rule 9(b).  And if the Arkansas, Oklahoma, or Louisiana Plaintiffs wish to rely on Texas law, the motion for leave must establish their right to do so and must address the effect of the grower agreements and the choice-of-law provisions.

Plaintiffs' motion for leave must be filed no later than October 7, 2009.  In the event that Plaintiffs do not timely file a motion for leave, or their motion for leave does not establish that their filing of an amended complaint is appropriate, their complaint will be dismissed with prejudice.

SIGNED: September 14, 2009.

/s/ Terry R. Means
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE