IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CITY OF CLINTON, ARKANSAS | § | |
| | § | |
| V. | § | CIVIL NO. 4:09-CV-386-Y |
| | § | (Consolidated with |
| PILGRIM'S PRIDE CORPORATION | § | 4:09-CV-387-Y) |

ORDER GRANTING MOTION TO DISMISS

Pending before the Court is the Motion to Dismiss (doc. #20) filed by defendant Pilgrim's Pride Corporation ("Pilgrim's"). After review, the Court concludes that plaintiff City of Clinton, Arkansas ("the City"), does not have standing to pursue claims under § 192(a), (b), and (e) of the Packers & Stockyards Act, 7 U.S.C. § 181, et seq ("PSA"). The Court further concludes that the City's complaint fails to state a claim for promissory estoppel or fraud. Consequently, Pilgrim's motion to dismiss will be granted.

I.  Background

Pilgrim's, one of the world's largest growers and processors of chicken, is also the successor in interest to Con Agra Foods, which was a competing poultry producer. Con Agra owned and operated facilities for growing and processing poultry in the City. Pilgrim's acquired these facilities as part of its purchase of Con Agra's operations and assets.

According to the City, beginning in 1985, Con Agra represented that if the City would make certain capital expenditures and expand certain of its facilities, Con Agra would continue to operate its facilities in the City and provide employment to local residents. Pilgrim's has allegedly made similar representations, and has

threatened that unless the City expanded its water and waste-water facilities it would cease its operations there.

In October of 2008, Pilgrim's announced that it was "idling," or closing, at least temporarily, its facility in the City. According to the City, Pilgrim's did so in an effort to manipulate the price of chicken upward by reducing supply. The City contends that this is in violation of the PSA, and that it suffered injury in the form of lost employment with related negative effects on the local economy. The City further insists that Pilgrim's representations that it would continue its operations in the City in exchange for the expansion of city facilities to support such operations were fraudulent and should be enforced through promissory estoppel.

II. Discussion

    A. Standard for Dismissal Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is

viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1969)). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*, 677 F.2d at 1050. The Court must also "limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

B. Claims Under the PSA

The PSA creates a private cause of action for violations of its provisions. Specifically, § 209 provides:

> "If any person subject to this Act violates any of the provisions of this Act, or of any order of the Secretary under this Act, relating to the purchase, sale, or handling of livestock, the purchase or sale of poultry, or

3

> relating to any poultry growing arrangement or swine production contract, he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation."

7 U.S.C. § 209(a). According to the City, it is a person that has been injured by violations of the PSA committed by Pilgrim's and, therefore, may bring suit against Pilgrim's under the PSA.

Pilgrim's argues that the City does not qualify as a person within the meaning of the PSA. Under § 182, "[t]he term 'person' includes individuals, partnerships, corporations, and associations." 7 U.S.C. § 182(1). Pilgrim's points out that, in its complaint, the City characterizes itself as a "municipality" and a "locality," as opposed to any of the entities listed in § 182(1).

The City counters that it is a municipal corporation, chartered under the laws of the State of Arkansas. But, as noted by Pilgrim's, this fact is not pleaded in the City's complaint. And although the City offers to submit documentation of its charter, the Court's inquiry is limited to the facts pleaded in the complaint and documents attached to or incorporated in the complaint. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

Even assuming that the Court could take notice of or consider the City's municipal-corporation form, the City does not qualify as a person within the meaning of the PSA. An issue of statutory construction is a question of law for the Court to decide. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995). Of course, "in any case of statutory construction, [the] analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S.

4

432, 438 (1999); *see also Engine Mfrs. Assn. v. South Coast Air Quality Management Dist.*, 541 U.S. 246, 252, 124 S. Ct. 1756, 158 L. Ed. 2d 529 (2004) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose") (internal quotation marks omitted). When a statute specifically defines a term, a court is bound to apply that definition. *See Stenberg v. Carhart*, 530 U.S. 914, 942 (2000). But when a term is not defined, it is given its ordinary meaning. *See Watson v. United States*, 552 U.S. 74, 128 S. Ct. 579, 583 (2007) ("With no statutory definition . . . the meaning of [a term] has to turn on the language as we normally speak it . . . .") (citations omitted). And where the terms of the statute are unambiguous, the "judicial inquiry is complete." *Rubin v. United States*, 449 U.S. 424, 430 (1981).

There is a significant amount of case law addressing the issue of whether a municipal corporation is a person under statutes defining "person" as including corporations. *See* 62 C.J.S. *Municipal Corporations* § 5 (2009). Surprisingly, neither party addresses this case law. Nevertheless, many cases conclude that, in ordinary usage, the term "corporation" does not refer to a municipality. *See Wilcox v. City of Idaho Falls*, 23 F. Supp. 626, 629 (D. Idaho 1938) ("Ordinarily the word 'corporations' does not include 'municipal' corporations unless such construction is made imperative from the context of the statute."); *State v. Central Power & Light Co.*, 161

S.W.2d 766, (Tex. 1942) ("[A]s a general rule the word 'corporation' is construed to apply only to private corporations and does not include municipal corporations, unless the statute expressly so provides."); *City of Webster Groves v. Smith*, 102 S.W.2d 618, 618 (Mo. 1937) (noting that "[i]n common parlance, towns, cities and other municipal organizations are not known as corporations") (quoting *Lineham v. City of Cambridge*, 109 Mass. 212, 213 (Mass. 1872)); *Donahue v. City of Newburyport*, 98 N.E. 1081, 1082 (Mass. 1912) ("[I]n common speech it is rarely that a city or town is referred to merely as a corporation.").

Some cases conclude that a municipal corporation is a corporation and, therefore, a person within the meaning of various statutes. *See City of Lincoln, Neb. v. Ricketts*, 297 U.S. 373, 374-75 (1936) (bankruptcy code definition of "person," which includes corporations, held to include municipal corporations); *City of Virginia Beach v. Flippen*, 467 S.E.2d 471, 473-74 (Va. 1996); *City of Little Falls v. State*, 198 A.D. 488, 489-492 (N.Y. App. Div. 1921) (concluding municipal corporation is person under New York's Canal Law, which defined person to include corporations). But these cases rely on the "dual identity" of a municipal corporation--that a municipal corporation is both a political body and a corporate body--in concluding that a municipal corporation should be treated as a person when performing private functions. *See City of Virginia Beach*, 467 S.E.2d at 473-74. Such dual treatment of government entities and distinctions between governmental and proprietary

6

functions of a government entity has been done away with in the federal courts, at least in the contexts of intergovernmental tax immunity and intergovernmental regulatory immunity. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 547 (1985) (rejecting the distinction between governmental and proprietary functions and overruling *Ohio v. Helvering,* 292 U.S. 360 (1934), which had held that a state was a person under statutes taxing the sale of liquor because the sale of liquor is not governmental function). Perhaps more importantly, these cases address statutes that include statutory definitions that clearly include governmental divisions or that contain broad language that lend themselves to the conclusion that a municipality was meant to be included in the term "person." *Cf. City of Virginia Beach*, 467 S.E.2d at 473 (citing then Code of Virginia section 1-13.19 which provided, in part, that the word "person" "shall include any . . . legal entity"); *City of Little Falls*, 198 A.D. at 489-90 (addressing New York's Canal Law, which defined "person" as including "the State, or any other State, government or country [that] may lawfully own property in the State).

For instance, the United States Supreme Court has stated that "[a] municipal corporation is a corporation within the usual sense of the term." *City of Lincoln, Neb. v. Ricketts*, 297 U.S. 373, 374 (1936). In *Ricketts*, the Supreme Court was tasked with deciding whether a municipal corporation is a person entitled to priority payment of its debt under then section 64b of the Bankruptcy Act.

7

*Id.* Section 64b defined "person" to include corporations, and section 1a(6) of the Bankruptcy Act defined "corporation" as "all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships." *Id.* The Supreme Court concluded that, taking the term in context, "corporation" included municipal corporations. *Id.* at 374-75. The Bankruptcy Act's broad definition of "corporation" extended to "all bodies" that have the powers and privileges of private corporations, not solely private corporations. Municipal corporations have such powers and privileges. *Id.* And in other portions of the Bankruptcy Act, Congress had specifically excluded municipal corporations from the meaning of "corporation" or "person." *Id.* at 375.

The PSA's use of the term "person" does not extend to any entity with the powers or privileges of private corporations. The PSA's definition of "person," unlike the language addressed in other cases, does not specifically address governmental entities or include broad catch-all language indicating that any legal entity with an independent identity must be considered a person. *Cf. City of Virginia Beach*, 467 S.E.2d at 473 (addressing statute that provides the term "person" "shall include any . . . legal entity"); *City of Little Falls*, 198 A.D. at 489-90 (addressing statute that defined "person" as including any government entity that could own property). And unlike the bankruptcy provisions at issue in *Ricketts*, the PSA does not include a definition of corporation that causes the term "person" to encompass any legal entity with the

8

powers or privileges of a private corporation. Indeed, the PSA does not define "corporation" at all, leaving the Court to give that term its plain meaning. Quite simply, "[i]n common parlance, towns, cities and other municipal organizations are not [referred to] as corporations." *City of Webster Groves*, 102 S.W.2d at 618.

And to the extent that the PSA's use of the term "corporation" in defining the term "person" is ambiguous, the ambiguity must be resolved against including municipal corporations within the meaning of person. As argued by Pilgrim's, under the canon of construction noscitur a sociis, "a word is known by the company it keeps." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961). That is, "words grouped in a list should be given related meaning." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, (1990). The PSA's definition of "person" groups corporations with individuals, associations, and partnerships--private entities, with the latter two terms referring to private business organizations carried on for profit. *See* Black's Law Dictionary 119, 1142 (7th ed. 1999). Thus, unlike the language at issue in *Ricketts*, which extended the meaning of "person" to "all bodies" possessing the powers or privileges of a private corporation, given the context of the PSA's use of the term "corporation," it is limited to private entities organized to conduct business for profit.

Moreover, as noted by Pilgrim's, Congress has shown that it does not understand the term "corporation" to include municipal corporations when defining the term "person." Pilgrim's cites

9

several statutes in which Congress specifies municipalities as falling under the statute's coverage despite the statute's separate inclusion of corporations. *See* 42 U.S.C. § 300f(12) (defining "person" as including both a corporation and municipalities); *see also* 42 U.S.C. § 7602(e); 42 U.S.C. § 9601(21); 33 U.S.C. § 1362(5); 33 U.S.C. § 2701(27). Given these examples of Congress's differentiation between private corporations and municipal corporations, it is all the more appropriate to apply noscitur a sociis to prevent the use of the term "corporations" in the PSA from taking on a breadth of meaning not intended by Congress. *Cf. Jarecki*, 367 U.S. at 307 ("The maxim noscitur a sociis is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.").

Finally, with regard to the PSA, the City seeks attorneys' fees. Pilgrim's argues in its motion to dismiss that the City has not cited any provision of the PSA or other law that authorizes an award of attorneys' fees in this case. The City does not respond to this portion of Pilgrim's motion. After review, the Court concludes that the City has, in fact, failed to cite any authority that would allow the Court to award attorneys' fees. *Cf. Liberty Mut. Ins. Co. v. Bankers Trust Co.*, 768 F. Supp. 70, 72-73 (S.D.N.Y. 1991) (denying attorneys' fees for a claim based on § 209 of the PSA).

Consequently, Pilgrim's motion to dismiss the City's PSA claims and claim for attorneys' fees will be granted.

C.  Fraud and Promissory Estoppel

The City also asserts claims of fraud and for promissory estoppel.  The City's jurisdictional allegations in its complaint aver that its claims "are based on federal statutory rights arising under the" PSA.  (Compl. at 3-4.)  Nevertheless, the City does allege its own citizenship, as well as that of Pilgrim's, and it is clear that the two are diverse.  Additionally, the City's complaint establishes that more than the jurisdictional amount set by 28 U.S.C. § 1332 is at stake with regard to the fraud and promissory-estoppel claims.  Thus, this Court has diversity jurisdiction over those claims.

Generally, a federal court sitting in diversity applies the law of the forum in which it sits.  *See Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 881 (5th Cir. 2004).  But, as noted by Pilgrim's, many, if not all, of the events giving rise to this case occurred in Arkansas.  Under such circumstances, a Court is to apply the choice-of-law rules of the forum in which it sits to determine what state's substantive law applies.  *See Benchmark Electronics, Inc. v. J.M. Huber Corporation,* 343 F.3d 719, 726 (5th Cir. 2003).  Pilgrim's discusses both Arkansas and Texas law in briefing its motion, and the law of the two states on relevant points is virtually identical.  The City does not dispute this.  Thus, the Court need not perform a choice-of-law analysis.  *See Stewart v. United States*, 512 F.2d 269, 272 n.10 (5th Cir. 1975) (noting there is no choice-of-law problem where the law of the relevant states is

11

identical); *Smith v. Am. Founders Fina. Corp.*, H-05-1779, 2006 WL 2844251, at *7 (S.D. Tex. Sept. 29, 2006) (same).

The City, in its response brief, makes no effort to defend the sufficiency of its pleading of these claims. The City simply insists that before its "allegations are tested under the Rule 12(b) or 9(b) standard, it should have the opportunity to replead . . . with greater specificity." (Pl.'s Resp. Br. at 18.) The City then cites cases for the proposition that a litigant should be granted leave to amend before a motion to dismiss is granted. *See, e.g., Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). According to the City, it would be more efficient to allow it to replead its claims before ruling on Pilgrim's motion.

But the City does not explain how this is more efficient. Pilgrim's has been put to the task of reviewing and responding to the City's complaint and the motion of Pilgrim's to dismiss is properly before the Court. And the cases cited by the City do not provide support for the City's course of action here--the filing of deficient pleadings, waiting for such pleadings to be challenged by a motion to dismiss, and then, without explaining how an amended complaint will remedy the identified deficiencies, demanding an opportunity to replead. Rather, the United States Court of Appeals for the Fifth Circuit has simply admonished that courts should not dismiss a complain *with prejudice* before an opportunity to replead is given. *Id.* (citing *Cates v. Int'l Tel. and Tel. Corp.,* 756 F.2d 1161, 1180 (5th Cir.1985). Indeed, the Fifth Circuit has recognized

that it is proper to grant a motion to dismiss an original complaint and that leave to amend may be refused; for instance, when the deficiencies identified are incurable. *Id.* (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir.1991)).

After review of the City's complaint, the Court concludes that it fails to state a claim for either promissory estoppel or fraud. Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b). "[T]he Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). The City's complaint provides only a vague description of the allegedly false representation, alleging that Pilgrim's represented that if the City "made certain capital expenditure and constructed certain facilities, then Pilgrim's would continue to operate its plant and employ local residents." (Compl. at 11.) The City does not allege why this statement is false. Nor does the City allege who made the representation or when it was made.

The City's other fraud allegations, (Compl. at 20), also fail for lack of specificity. The City contends that Pilgrim's represented that the City could "rely on the continued operations of Pilgrim's" in the City. (*Id.*) But there is no allegation of the speaker, the time when this representation was made, or why it is fraudulent. "Continued" does not mean perpetual or indefinite and,

13

by all accounts, Pilgrim's did operate the facility in the City for some time. And there is no allegation that the current idling of the Pilgrim's facility is permanent.

Similarly, the City alleges that Pilgrim's represented that it equally evaluates its facilities. Again, there is no identification of the speaker, when the representation was made, why it was made, or why it is fraudulent.

And the City's fraudulent-nondisclosure allegations contain no facts that support a conclusion that Pilgrim's had a duty to disclose to the City information regarding its operations. The existence of a duty to disclose is an essential element of a fraudulent-nondisclosure claim. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 653 S.W.2d 128, 135 (Ark. 1983) (noting action for fraud by concealment must be based on duty to disclose). The City alleges that Pilgrim's represented that the facility in the City was profitable and strong without disclosing the impact that considerations of locality and competition might have upon the decision to close a plant. These allegations provide no support for a conclusion that the sort of special relationship giving rise to a duty to disclose existed between the City and Pilgrim's. Consequently, the City's claims for fraud and fraudulent nondisclosure will be dismissed.

To state a claim for promissory estoppel, a plaintiff must allege: (1) that the defendant made a promise; (2) that the defendant should have foreseen that the plaintiff would rely on the

promise; (3) that the plaintiff did, in fact, act in reliance on the promise to his detriment; and (4) that injustice can be avoided only by enforcing the promise. *See Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex.1997); *Van Dyke v. Glover*, 934 S.W.2d 204, 209 (Ark. 1996). Again, just as with its fraud claims, the City makes only vague allegations that Pilgrim's promised it would continue its operations if the City made certain capital expenditures and built facilities. No specifics of the promise involved, such as the duration of Pilgrim's promised operations, are discussed. *See City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 138 (Tex. App.--Beaumont 1993, writ denied) (concluding statement that amounted to speculation about future events and that did not set a time frame for performance of the alleged promise could not support claim for promissory estoppel); *Gillium v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex.App.--Dallas 1989, no writ) (concluding that a vague and indefinite promise could not support claim for promissory estoppel); *cf. Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1281 (11th Cir. 2003) ("[P]romissory estoppel has no application where the promise relied upon is for an indefinite duration."). Given the indefiniteness of the alleged promise, the City could not reasonably rely on it. *Cf. Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 503 (Tex. 1998) (concluding that a party may not reasonably or justifiably rely on indefinite promises).

15

III. Conclusion

The Court concludes that the City is not a person within the meaning of the PSA and, therefore, may not maintain an action for damages under that act. The Court further concludes that the City has not sufficiently pleaded its claims for promissory estoppel or fraud. Finally, the Court concludes that there is no authority for an award of attorneys' fees to the City in this case.

Accordingly, Pilgrim's motion to dismiss is GRANTED and the City's complaint is dismissed. This dismissal is without prejudice. Before a district court dismisses claims with prejudice, the plaintiff must be given a "fair opportunity to make his case." *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, (5th Cir. 2003). Thus, the Court will allow the City to file a motion for leave to file an amended complaint. *See Whitaker v. City of Houston*, 963 F.2d 831, 835 (5th Cir. 1992) (holding that after a complaint has been dismissed the plaintiff must seek leave to file an amended complaint, regardless of whether a responsive pleading has been filed). The motion for leave must be accompanied by the proposed amended complaint. *See* N.D. TEX. LOC. R. CIV. P. 15.1. The proposed complaint must allege facts in support of each element of the promissory-estoppel and fraud claims. And the fraud claims must be pleaded with the specificity required by Rule 9(b).

The motion for leave must establish why the amended complaint states a claim against Pilgrim's. *See Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 531 (5th Cir. 2004) (holding that district

16

court, having granted a motion to dismiss, properly denied plaintiff's motion to amend because the proposed amendment did not cure the complaint's defects). The City's motion for leave must be filed no later than September 30, 2009. In the event that the City does not timely file a motion for leave, or its motion for leave does not establish that its filing of an amended complaint is appropriate, its complaint will be dismissed with prejudice.

SIGNED: September 15, 2009.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE